1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Nov 23, 2021**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| CHARLES S., | No: 2:20-CV-00413-LRS |
|---|---|
| Plaintiff, v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 20, 21. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Chad L. Hatfield. Defendant is represented by Special Assistant United States Attorney Joseph J. Langkamer. The

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER ~ 1

Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 20, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 21, and **REMANDS** the case for to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Charles S.[2] filed an application for Supplemental Security Income (SSI) on March 23, 2018, Tr. 96, alleging disability since January 1, 2018, due to lymphoma, back pain, right hip pain, insomnia, high cholesterol, stutter, arthritis, joint pain, and right knee pain, Tr. 206, 239.  Benefits were denied initially, Tr. 114-22, and upon reconsideration, Tr. 126-32.  A hearing before Administrative Law Judge Jesse Shumway ("ALJ") was conducted on December 18, 2019.  Tr. 35-83.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of medical expert Alvin Stein, M.D. and vocational expert Daniel McKinney.  *Id*.  The ALJ denied benefits on January 22, 2020.  Tr. 15-30.  The Appeals Council denied Plaintiff's request for review on September 14, 2020.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. §§

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

405(g); 1383(c)(3).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 50 years old at the alleged date of onset.  Tr. 205-06.  He completed the twelfth grade in 1985.  Tr. 240.  Plaintiff reported a work history as a concrete laborer.  Tr. 240.  At application, he stated that he stopped working on January 1, 2015, due to his conditions.  Tr. 239-40.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by  42 U.S.C. §§ 405(g), 1383(c).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

ORDER ~ 3

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  "The court will uphold the ALJ's

3    conclusion when the evidence is susceptible to more than one rational

4    interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

5    Further, a district court will not reverse an ALJ's decision on account of an error

6    that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the

7    [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).

8    The party appealing the ALJ's decision generally bears the burden of establishing

9    that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

10                            **FIVE-STEP EVALUATION PROCESS**

11    A claimant must satisfy two conditions to be considered "disabled" within

12    the meaning of the Social Security Act.  First, the claimant must be "unable to

13    engage in any substantial gainful activity by reason of any medically determinable

14    physical or mental impairment which can be expected to result in death or which

15    has lasted or can be expected to last for a continuous period of not less than twelve

16    months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

17    "of such severity that he is not only unable to do his previous work[,] but cannot,

18    considering his age, education, and work experience, engage in any other kind of

19    substantial gainful work which exists in the national economy." 42 U.S.C. §

20    1382c(a)(3)(B).

21    The Commissioner has established a five-step sequential analysis to

ORDER ~ 4

determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1    the claimant's "residual functional capacity."  Residual functional capacity

2    ("RFC"), defined generally as the claimant's ability to perform physical and

3    mental work activities on a sustained basis despite his or her limitations, 20 C.F.R.

4    § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5          At step four, the Commissioner considers whether, in view of the claimant's

6    RFC, the claimant is capable of performing work that he or she has performed in

7    the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

8    capable of performing past relevant work, the Commissioner must find that the

9    claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

10   performing such work, the analysis proceeds to step five.

11         At step five, the Commissioner considers whether, in view of the claimant's

12   RFC, the claimant is capable of performing other work in the national economy.

13   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

14   must also consider vocational factors such as the claimant's age, education, and

15   past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

16   adjusting to other work, the Commissioner must find that the claimant is not

17   disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

18   other work, analysis concludes with a finding that the claimant is disabled and is

19   therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

20         The claimant bears the burden of proof at steps one through four.  *Tackett v.*

21   *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386,

389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since March 23, 2018, the date of application.  Tr. 17.  At step two,

the ALJ found that Plaintiff has the following severe impairments:

methamphetamine abuse; obesity; and diabetes with peripheral neuropathy.  Tr. 18.

At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 20.  The ALJ then found that Plaintiff has the RFC to perform

light work as defined in 20 CFR § 416.967(b) with the following limitations:

> he can never crawl or climb ladders, ropes, or scaffolds, and can only
> occasionally perform all other postural activities; he can occasionally
> push and pull with the bilateral upper and lower extremities; he is
> limited to frequently handling fingering, and feeling; he can have no
> exposure to pulmonary irritants, occasional exposure to temperature
> extremes of cold and hot, and frequent exposure to humidity and
> wetness; he is limited to simple, routine tasks consistent with a
> reasoning level of two or less; and he is limited to occasional contact
> with the public.

Tr. 22.  At step four, the ALJ found that Plaintiff had no past relevant work.  Tr.

28.  At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there were other jobs that exist in significant numbers in the

ORDER ~ 7

national economy that Plaintiff can perform, including: garment sorter; warehouse

checker; and weight recorder.  Tr. 29.  On that basis, the ALJ concluded that

Plaintiff was not under a disability, as defined in the Social Security Act, from

March 23, 2018, the date of application, through the date of his decision.  Tr. 30.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him SSI benefits under Title XVI of the Social Security Act.  ECF No. 20.

Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ made a proper step two determination;

2.    Whether the ALJ properly assessed the persuasiveness of the medical source

      opinions;

3.    Whether the ALJ properly addressed Plaintiff's symptom statements; and

4.    Whether the ALJ made a proper step five determination.

### DISCUSSION

**1.    Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that the

ALJ failed to account for his bilateral carpal tunnel syndrome, right hip degenerative

joint disease, depressive disorder, and generalized anxiety disorder.  ECF No. 20 at

18-19.

To show a severe impairment, the claimant must first establish the existence

of a medically determinable impairment by providing medical evidence consisting of

ORDER ~ 8

signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairment(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

At step two, the ALJ found that Plaintiff had the following severe impairments: methamphetamine abuse; obesity; and diabetes with peripheral neuropathy. Tr. 18. The ALJ discussed the alleged impairments of bilateral carpel tunnel syndrome, right hip osteoarthritis, and mental health impairments, but found they were either not medically determinable or not severe. Tr. 18-19.

### A.    Bilateral Carpal Tunnel Syndrome

Plaintiff alleges that his bilateral carpal tunnel syndrome is a severe impairment at step two. ECF No. 20 at 18. The ALJ addressed Plaintiff's alleged bilateral carpal tunnel syndrome and found that there were no medical signs or laboratory findings to support the existence of carpal tunnel syndrome. Tr. 18-19.

ORDER ~ 9

1    Therefore, he found it was not a medically determinable impairment.  *Id.*

2         However, the record shows that Plaintiff had multiple positive Tinel's sign,

3    Tr. 907, 911, 923, and Phelan's sign, Tr. 923, when examined by Dr. Woodruff.

4    Based on these tests, Dr. Woodruff diagnosed Plaintiff with bilateral carpal tunnel

5    syndrome.  Tr. 908, 913, 924.  Both the Tinel's sign and Phelan's sign are

6    diagnostic tests for carpal tunnel syndrome.  1 DAVID A. MORTON, III, M.D.,

7    SOCIAL SECURITY DISABILITY MEDICAL TESTS §§ 1.20, 1.26 (1st ed. 2015).

8    Therefore, the ALJ's determination that there were no medical signs or laboratory

9    findings to support the existence of carpal tunnel syndrome is not supported by

10   substantial evidence and cannot be upheld.

11        In his decision, the ALJ commented that  Dr. Woodruff was "only a resident

12   physician."  Tr. 18.  The Court acknowledges that an impairment must be

13   established by objective medical evidence from an acceptable medical source.  20

14   C.F.R. § 416.921.  However, any implication that the diagnostic tests failed to meet

15   the requirements of 20 C.F.R. § 416.21 because Dr. Woodruff was not an

16   acceptable medical source is unavailing.  Multiple doctors oversaw Dr. Woodruff's

17   diagnostic testing and treatment during each evaluation and agreed with the overall

18   assessment and treatment plan set forth by Dr. Woodruff.  Tr. 905, 910, 922.

19        Defendant argues that any error resulting from the ALJ's step two

20   determination would be harmless.  ECF No. 21 at 18-19.  However, the ALJ

21   rejected the opinion of Dr. Woodruff because he relied on non-medically

ORDER ~ 10

determinable impairments, including carpal tunnel syndrome. Tr. 27. Therefore, the case is remanded for the ALJ to readdress Plaintiff's carpal tunnel syndrome at step two accepting the positive Tinel's signs and positive Phelan's signs as objective medical evidence.

## B.    Right Hip Osteoarthritis

Plaintiff alleges that his right hip osteoarthritis is a severe impairment at step two. ECF No. 20 at 18. The ALJ addressed Plaintiff's alleged "mild right hip osteoarthritis," along with lymphoma, hypertension, tachycardia, sepsis, and cellulitis and made the following finding:

> these conditions, whether considered singly or in combination, have caused only transient and mild symptoms and limitations, are well controlled with treatment, did not persist for twelve continuous months, do not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities, or are otherwise not adequately supported by the medical evidence of record. Accordingly, these impairments do not constitute severe impairments.

Tr. 18. Since the ALJ addressed all the impairments together and rejected them all for the above reasons, the ALJ's rationale is not specific enough to allow for judicial review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"). It is unclear why the ALJ found Plaintiff's osteoarthritis was not severe. Therefore, on remand, the ALJ will readdress Plaintiff's osteoarthritis at step two.

///

### C.    Depressive Disorder and Generalized Anxiety Disorder

Plaintiff alleges that his depression and anxiety were severe impairments at step two.  ECF No. 20 at 18.  The ALJ found that Plaintiff's mental health impairments, except for methamphetamine abuse, were not medically determinable impairments.  Tr. 20.  ("As these diagnoses were made without information regarding the claimant's actual substance use and with little objective findings to support these diagnoses beyond the claimant's own subjective complaints, these are nonmedically determinable mental health impairments.").

In 2015, Dr. Arnold diagnosed Plaintiff with depression and anxiety following psychological testing including a Rey 15-Item Memory Test, Trails Test, Beck Depression Index (BDI-1), and Beck Anxiety Index (BAI).  Tr. 362.  Plaintiff reported he had never used illegal drugs.  Tr. 361.  His mental status exam showed an anxious/depressed mood, moderately constricted affect, some delusional thought content, and failed serial 7's and serial 3's.  Tr. 364-65.

In 2018, Dr. Arnold reevaluated Plaintiff and again diagnosed him with depression and anxiety.  Tr. 357.  The mental status exam showed moderately to severely depressed and moderately anxious mood, moderately constricted affect, abnormal short-term memory, and a failed attempt at the serial 7's and serial 3's.  Tr. 359-60.  In this evaluation, Plaintiff again denied drinking or using any illicit drugs since his last evaluation.  Tr. 356.

Despite the repeated statements that he did not use illicit drugs, Plaintiff was

treated for acute methamphetamine toxicity in January of 2018.  Tr. 307, 310.

Therefore, the ALJ was accurate that Dr. Arnold was not aware of Plaintiff's illicit

drug use.  Tr. 20 ("Dr. Arnold's opinions were formed based on the claimant's

false reports of no drug use, which deprived Dr. Arnold of the opportunity to

assess the effect of the claimant's drug use before offering opinions on the

claimant's diagnoses or functional limitations.").  However, the ALJ's conclusion

that the diagnoses of depression and anxiety were made "with little objecting

findings," Tr. 20, is not supported in the record considering the testing performed

and the observations made during Dr. Arnold's evaluations.

In August of 2019, Dr. Woodruff completed a depression screening that

showed a PHQ-9 score of 19, which correlates with moderately severe depression,

and a GAD-7 score of 17, which correlates with severe generalized anxiety.  Tr.

911.  Dr. Woodruff diagnosed Plaintiff with major depressive disorder, stating that

it was new, but he also noted past PHQ-9 scores as high as 16 eighteen months

ago.  Tr. 912.  Depression screening the next month showed a PHQ-9 score of 20,

consistent with severe depression, and a GAD-7 score of 17, consistent with severe

generalized anxiety disorder.  Tr. 923.  Additionally, Dr. Woodruff observed an

anxious mood.  *Id*.  Plaintiff admitted to concurrent drug use including

methamphetamine.  Tr. 924.  The ALJ found that the diagnosis of mental health

impairments were not reliable because he was a primary care physician, not a

mental health specialist, and he failed to differentiate between the claimant's

known drug use and mental health symptoms.  Tr. 20.  Furthermore, the ALJ

concluded that Dr. Woodruff's treatment notes indicate that Plaintiff's mental

health impairments were the result of his sexual disfunction and not a severe

mental health impairment.  Tr. 20 ("There is nothing in Dr. Woodruff's

examination notes that indicates severe mental health issues outside of his

reasonable distress regarding sexual functioning, which is related to his diabetes

mellitus condition.").  The ALJ's assertion that a primary care physician does not

have the training to diagnose depression and anxiety in light of substance abuse or

the ability to differentiate mental health symptoms from the impact of sexual

disfunction is the ALJ stepping into the role of doctor and not that of adjudicator.

An ALJ may not insert his interpretation of the results in place of an examining

physician's opinion.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)

("[J]udges, including administrative law judges of the Social Security

Administration, must be careful not to succumb to the temptation to play doctor.

The medical expertise of the Social Security Administration is reflected in

regulations; it is not the birthright of the lawyers who apply them.  Common sense

can mislead; lay intuitions about medical phenomena are often wrong.") (citations

omitted).  On remand, the ALJ will readdress Plaintiff's alleged mental health

impairments at step two in light of the objective testing and observations of

Plaintiff's providers.

///

ORDER ~ 14

**2.    Medical Source Opinions**

Plaintiff challenges the ALJ's determination regarding the persuasiveness of the opinions from Michael Woodruff, M.D., John Arnold, Ph.D., Janis Lewis, Ph.D., and Alvin Stein, M.D.  ECF No. 20 at 8-18.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source.  20 C.F.R. § 416.920c(c).  The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  *Id.*  The regulations emphasize that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20

C.F.R. § 416.920c(b).  The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*

Supportability and consistency are further explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c).[3]

### A.    Michael Woodruff, M.D.

On September 30, 2019, Dr. Woodruff completed a Medical Report form. Tr. 902-04.  He diagnosed Plaintiff with hypertension, sinus tachycardia, obesity, diabetes type II, carpal tunnel syndrome, major depressive disorder, history of

---

[3]The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician.  ECF No. 22 at 1-2. The Court finds resolution of this question unnecessary to the disposition of this case.

ORDER ~ 16

diffuse large cell lymphoma.  Tr. 902.  He opined that if Plaintiff attempted to

work a 40-hour week scheduled, it was more probably than not that he would miss

work four or more days per month.  Tr. 903.  He limited Plaintiff to sedentary work

with occasional handling and frequent reaching with the upper extremities.  Tr.

903-04.  He further opined that Plaintiff would be off task 12% to 20% of the time

if working a 40-hour work week.  Tr. 904.  He completed the form with the

following statement: "I would continue to encourage [Plaintiff] to pursue other

form[s] of work – unable to do concrete work now.  His anxiety limits him.  [H]e is

however declining counseling at this time. – Update, he is starting to call Frontier

Behavioral Health.  If anything[,] would ONLY support temporary disability, not

permanent."  Tr. 904.

The ALJ found the opinion to be not persuasive.  Tr. 26-27.  In addressing

supportability, the ALJ found that the opinion was "not consistent with or

supported by the longitudinal evidence of record, including the evidence received

at the hearing level and Dr. Woodruff's own limited treatment notes."  Tr. 26.  The

ALJ went on to state that "Dr. Woodruff's opinions are offered with little

explanation, and what explanation is provided shows that Dr. Woodruff is relying

on nonmedically determinable impairments, such as [carpal tunnel syndrome], in

making his assessment.  Tr. 26-27.  As discussed above, the ALJ's determination

that carpal tunnel syndrome was not a medically determinable impairment was not

supported by substantial evidence.  Therefore, the ALJ's discussion of

1  supportability is also not supported by substantial evidence.  The ALJ will

2  readdress Dr. Woodruff's opinion on remand.

3  **B.    John Arnold, Ph.D.**

4  On November 30, 2015, Dr. Arnold evaluated Plaintiff and later completed a

5  Psychological/Psychiatric Evaluation of Plaintiff for the Washington State

6  Department of Social and Health Services (DSHS).  Tr. 361-65.  The ALJ

7  diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder,

8  rule out somatic symptom disorder, and rule out antisocial personality disorder and

9  schizotypal personality disorder features.  Tr. 362.  He opined that Plaintiff had a

10  marked limitation in five areas of basic work function and a moderate limitation in

11  seven areas of basic work function.  Tr. 363.  He opined that these limitations

12  would last fifteen months with available treatment.  Tr. 364.

13  On April 23, 2018, Dr. Arnold completed a second

14  Psychological/Psychiatric Evaluation of Plaintiff for DSHS.  Tr. 356-60.  He

15  diagnosed Plaintiff with persistent depressive disorder, generalized anxiety

16  disorder, and a rule out of antisocial personality disorder features.  Tr. 358.  He

17  opined that Plaintiff had a severe limitation in the ability to adapt to changes in a

18  routine work setting, a marked limitation in six basic work functions and a

19  moderate limitation in the remaining six basic work functions.  Tr. 358.  He opined

20  that these limitations would last twelve months with available treatment.  Tr. 359.

21  The ALJ found both opinions to be unpersuasive.  Tr. 27-28.  When

discussing supportability, the ALJ found that both opinions were "premised entirely on nonmedically determinable impairments and are therefore unpersuasive." Tr. 27, 28. As discussed above, the ALJ erred in his determination that Plaintiff's mental health impairments were not medically determinable impairments. Therefore, the ALJ's discussion of supportability and finding that the opinions were unpersuasive cannot be upheld. Therefore, on remand, the ALJ will readdress the opinions of Dr. Arnold.

### C.    Janis Lewis, Ph.D.

In April of 2018, Dr. Lewis reviewed Dr. Arnold's medical reports and provided an opinion that matched that of Dr. Arnold's 2018 opinion. Tr. 366-69. The ALJ found the opinion was not persuasive because it was based on Dr. Arnold's opinion. Tr. 28. As addressed above, the ALJ must readdress the persuasiveness of Dr. Arnold's opinions. Therefore, the ALJ will readdress the persuasiveness of Dr. Lewis' opinion on remand.

### D.    Alvin Stein, M.D.

Dr. Stein testified at Plaintiff's hearing on December 18, 2019. Tr. 41-60. Dr. Stein opined that Plaintiff was limited to light work with a limitation to sitting for four hours or more as needed during the day. Tr. 47. He limited Plaintiff's pushing and pulling with the upper and lower extremities due to neuropathy. He stated that he might have difficulty grasping things and holding tight for repetitive use of his hands while pushing and pulling. *Id*. He limited Plaintiff to occasional

1   climbing ramps or stairs, balancing, stooping, kneeling, or crouching.  *Id*.  He

2   precluded Plaintiff from climbing ropes, ladders, or scaffolds, from working in

3   high, exposed locations, and from crawling.  *Id*.  He limited Plaintiff to frequent

4   handling, fingering, feeling.  Tr. 48.  He further limited Plaintiff to frequent

5   exposure to wet or humid weather and occasional exposure to extreme cold or heat.

6   *Id*.  He precluded Plaintiff from exposure to fumes, dust, odor, and pollen.  *Id*.

7        The ALJ found Dr. Stein's opinion regarding sitting to be not persuasive, but

8   found the remainder of the opinion to be persuasive.  Tr. 25-26.  Considering the

9   case is being remanded for additional proceedings, the ALJ will readdress the

10   persuasiveness of Dr. Stein's opinion on remand.

11   **3.    Plaintiff's Symptom Statements**

12        Plaintiff challenges the ALJ's treatment of his symptom statements.  ECF

13   No. 20 at 19-20.

14        It is generally the province of the ALJ to make determinations regarding the

15   reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035,

16   1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent

17   reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

18   affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

19   testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

20   1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

21        The ALJ found Plaintiff's "statements concerning the intensity, persistence,

1  and limiting effects of these symptoms are not entirely consistent with the medical

2  evidence and other evidence in the record for the reasons explained in this

3  decision." Tr. 23.  The evaluation of a claimant's symptom statements and their

4  resulting limitations relies, in part, on the assessment of the medical evidence.  *See*

5  20 C.F.R. § 416.929(c); S.S.R. 16-3p.  Therefore, in light of the case being

6  remanded for the ALJ to readdress the medical source opinions in the file, a new

7  assessment of Plaintiff's subjective symptom statements will be necessary.

8  **4.    Step Five**

9        Plaintiff argues that the ALJ erred at step five by presenting an incomplete

10  hypothetical to the vocational expert.  ECF No. 20 at 20-21.

11        The hypothetical presented to the vocational expert matched the ALJ's RFC

12  determination.  Tr. 22, 77.  A claimant's RFC is "the most [a claimant] can still do

13  despite [his] limitations."  20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404,

14  Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to

15  which the individual retains the capacity for sustained performance of the physical-

16  mental requirements of jobs.").  Since the ALJ has been instructed to readdress

17  step two, the persuasiveness of the medical opinions, and Plaintiff's symptoms

18  statements, a new RFC determination and a new step five determination will be

19  required upon remand.

20                                    **CONCLUSION**

21        Plaintiff requests that the Court remand the case for an immediate award of

benefits.  ECF No. 20 at 21.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  The record contains evidence of illicit drug use during the relevant period.  Tr. 307, 310.  In cases involving substance use

disorders, the ALJ must complete the five-step sequential evaluation in accord with S.S.R. 13-2p.  Therefore, even if the disputed evidence were credited as true, further findings would be required before a favorable determination could be made.  On remand, the ALJ must make a new step two determination in accord with this Order, readdress the persuasiveness of the medical opinions in the record, readdress Plaintiff's symptom statements, and make a new RFC determination and a new step five determination.  In addition, the ALJ will supplement the record with any outstanding medical evidence and take testimony from a vocational expert at any remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 20, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, ECF No. 21, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** November 23, 2021.

LONNY R. SUKO
Senior United States District Judge